UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LARON GLENN,

                Plaintiff,                      Case No. 1:17-cv-545

v.                                       Honorable Robert J. Jonker

A. POL. et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  The

Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform

Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner

action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon

which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28

U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se*

complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure

to state a claim against Defendants Wells, Rees, Blair, Nelson, Lansky, Muas, Smith, and

Christiansen.  The Court will serve the complaint against Defendants Pol, Mygrams, Bowerman,

Mieres, Diane, and Thomas.

## Discussion

I.    Factual allegations

Plaintiff Laron Glenn presently is incarcerated at the Marquette Branch Prison (MBP), though the actions about which he complains allegedly occurred at the Ionia Correctional Facility (ICF).   He sues the following ICF[1] officials:   Psychologists A. Pol and (Unknown) Mieres; Correctional Officers (unknown) Mygrams, (unknown) Bowerman, (unknown) Wells, (unknown) Rees, (unknown) Nelson, (unknown) Lansky, and (unknown) Muas; Assistant Resident Unit Supervisor (ARUS) Blair; Warden (unknown) Smith; Deputy Warden Christiansen; and Nurses (unknown) Thomas and Diane (unknown).

Plaintiff wrote to Defendant Psychologist Mieres on March 11, 2016, describing his deep depression with auditory and visual hallucinations.  Mieres did not come.  Plaintiff alleges that Defendant Mieres wrote a major misconduct against Plaintiff for his sexual misconduct.[2]  Thereafter, it appears that Plaintiff slashed his arm with a razor, causing a deep cut.[3]  He passed the razor to his neighbor, but he told the officers that he had swallowed it, to prevent the guards from "shaking down the unit."  (Compl., ECF No. 1, PageID.9.)  Plaintiff alleges that he bled so much that he got dizzy and passed out.  Unidentified officers took Plaintiff to the shower room, where he was strip-searched

---

[1] In his list of Defendants, Plaintiff indicates that the address for each of the Defendants is MPB. (Compl., ECF No. 1, PageID.3-4.)  In the description of the Defendants, however, Plaintiff states that all were officials at ICF at the time of the incidents alleged in the complaint. (*Id.*, PageID.7-8.)  In light of the context, and Plaintiff's express indication that he was at ICF at the time of the incidents (*Id.*, PageID.1), the Court concludes that Defendants are or were located at ICF.

[2] According to the attached Class-I misconduct hearing report, Plaintiff was found guilty of telling Defendant Mieres that he wanted to "hit her up on Facebook" after he got out of prison and "show [her] what this dick do." (Attach. to Compl., ECF No. 1-1, PageID.86.)

[3] Although Plaintiff has numbered his pages and none are missing, Plaintiff also has numbered his paragraphs. The Court is missing the last part of ¶ 12 through the first part of ¶ 15.  As a result, the Court has inferred from subsequent allegations that Plaintiff cut himself.

and cavity-searched.  Plaintiff complains that he was so depressed that he felt lifeless.  He was taken

to segregation and placed on suicide watch.  However, he was given no medical treatment for his cut

arm. Psychologist Gillium (not a Defendant) visited him, but he felt unable to talk because no one

cared.

   Plaintiff fell asleep.  While he was sleeping, Defendant Psychologist Pol visited

Plaintiff's cell, but Plaintiff again did not want to talk.  Plaintiff had continued to bleed, and he was

caked with blood.  Plaintiff went back to sleep, though he was cold and had only a suicide gown and

suicide blanket to cover him.

   At about 2:20 p.m., after the change in shift, Plaintiff heard a knock at the door and

heard someone say, "[H]oly sh*t."  (*Id.*, PageID.10.)  Defendant Bowerman then looked at Plaintiff

for a long time, so Plaintiff ignored him and went back to sleep.  Shortly thereafter, he heard his food

slot rattle, after which he felt something wet on his legs and groin and realized that he was being

maced. The spraying continued for a long time.  Bowerman yelled to Plaintiff to stop cutting himself

and continued to spray him.  Plaintiff yelled, "I was not fu*king cutting you retarded bi*ch.  I was

fu*king sleep [sic] and you know it."  (*Id.*)  At that point other unidentified officers arrived, ordered

him to back up to the door, cuffed him, and took him to the shower room.  Plaintiff was then ordered

to shower.  He contends that he was still bleeding.  Plaintiff told Defendant Bowerman that he would

have Bowerman assassinated by Plaintiff's brotherhood, a threat made to keep Bowerman from

killing him.

   While Plaintiff was in the shower, Psychologist Gillium came to the shower.  When

Plaintiff told him that he did not want to live anymore, Gillium advised him that he needed to take

his medications and stop denying that he was mentally ill.  Plaintiff responded that he was not more mentally ill than Gillium.

When Gillium left, Plaintiff was placed in belly chains and ankle shackles and taken to the nurse.  The unidentified nurse was unable to close the wound with butterfly stitches.  Plaintiff stated that he needed real stitches, but she stated that she was just concerned about stopping the flow of blood.

After Plaintiff was treated, unidentified officers escorted him to his cell and hog-tied him, making the chains so tight that he could not walk.  They then pushed him toward his bed, and he fell against the concrete and cut his head.  Plaintiff cursed the officers and made threats to have them assassinated.  Plaintiff refused to eat that day.  Officers kept Plaintiff in the chains from 2:30 p.m. to 8:30 a.m.  Plaintiff claims that he had major back and leg cramps and that the cuffs were so tight they cut into his arms, causing them to bleed.  Neither nurses nor supervisory officers checked on him.  When Plaintiff was removed from chains the next day, his back was so sore that all he could do was lie in bed.  He was not given Advil to treat the pain for 74 days.  He finally saw a health care provider about his back pain on June 7, 2016.

Plaintiff refused his food for about a week.  Plaintiff told the Prisoner Obervation Assistant (a prisoner) that the officers hated him and wanted to hurt him because he was a sex offender.  Defendant Mygrams knocked on his door and said, "You remember me. . . . I'm the one psych A. Pol told to rush and gas you the other day so keep refusing to eat your food if you want to." (*Id.*, PageID.14.)  Mygrams left the cell and announced to the unit, "This is whats going to happen to anyone who refuse to talk to your psych.  We not playing with yall no more."  (*Id.* (verbatim).)

-4-

Plaintiff was on suicide watch for 14 days.  Plaintiff refused to speak to Defendant Psychologist Pol, because Pol was the one who made the police hurt him.  Defendant Pol denied having the power to do that.  During the 14 days of suicide watch, the nurses refused to give him a new wrap for his arm.  All nurses, including Defendants Thomas and Diane, told him that they were only there to give him his medications.  When Defendant Nurse Thomas came to the cell, Plaintiff took the wrap off his wound and showed her that the wound had not closed and was oozing green pus.  Defendant Thomas flinched, but she refused to treat Plaintiff.

Also during his suicide watch, Defendants Nelson, Blair, Bowerman, Wells, and Rees denied Plaintiff grievances on April 1, 10, and 21, 2016.  Plaintiff kited the warden about issues on March 23, 27, and 20, 2016, but he received no response.  Plaintiff also sent a kite to the grievance coordinator.  Plaintiff alleges that multiple misconduct tickets were written against him and that he did not learn of them until months later.  He contends that he was denied parole because of the misconduct convictions.

Plaintiff alleges that all of the mistreatment arose after Officer Jensen (not a Defendant) told other officers and prisoners that he was a child molester, or "chomo," in order to cause Plaintiff's neighbor to attack him.  (*Id.*, PageID.18, 22.)  Plaintiff claims that he has been written false misconduct tickets and convicted on false misconduct charges, because officers are punishing him for being a child molester, though he was a child himself at the time.  After Plaintiff was released from suicide watch, he and his legal writer approached Officer Williams (not a Defendant), who advised Plaintiff and his legal writer that second-shift officers do not pass out grievances.  On May 13, 2016, Plaintiff received a memorandum stating that his case had been closed.  He received another memo on May 22, 2016.  Plaintiff also wrote to the Legislative

Ombudsman, but he did not receive a reply.  Plaintiff's legal writer brought Plaintiff three grievances, which Plaintiff completed and turned in to an unidentified second-shift officer, who told Plaintiff that none of his mail was going to go out.

When Plaintiff was given his property, some of it was missing.  Officer Stiwell (not a Defendant) tried to find it for days, and, when she could not, she brought Plaintiff a grievance form.  Plaintiff completed the grievance and submitted it, claiming that he was missing books, among other things.  Sergeant Kurr (not a Defendant) reviewed the grievance and told Plaintiff that he had never sent kites about the missing books.  Plaintiff retrieved his copies of the kites and responses.  Kurr nevertheless concluded that the grievance was meritless.  Plaintiff was refused a Step-II grievance.

Plaintiff investigated the missing books and determined that they had been sent to the prison.  In response to Plaintiff's kite, the mail room advised Plaintiff that it had forwarded the books to the property room.  The property room denied receiving them. Plaintiff told Resident Unit Manager Davis that he believed that Defendant Lansky, the Property Room Manager, had stolen his books, and he showed Davis the inconsistent kites.  Davis later returned the kites to Plaintiff, saying that she was unable to locate the mail room staff members who had responded to the kites.  Plaintiff then kited Defendant Christansen about the books, who responded that he thought the issue had been resolved and stated that Defendant Lansky had told him that she had delivered the books to Plaintiff. After Defendant Warden Smith denied Plaintiff's grievances, Plaintiff gave ARUS Nikita Haynes, whom he trusted, his Step-III grievance and 20 pages of evidence for forwarding to the MDOC central office.  However, Plaintiff never received a Step-III response.

In October 2016, Defendant Lansky met with Plaintiff.  She told him that, after reviewing her records, she discovered that the first three of the six books had been received, but not the second three.  She explained, however, that the books had disappeared from the stand while she performed other tasks.  Lansky advised Plaintiff to complete a reimbursement form, and she offered to vouch for his request.

Plaintiff contends that his allegations show that Defendant Mieres violated the Eighth Amendment when he refused to see Plaintiff, despite Plaintiff's suicidal ideation, leading Plaintiff to attempt suicide.  He next argues that Defendants Pol, Mygrams, and Bowerman conspired to and did rush Plaintiff while he was asleep and hogtied him for 17 hours, in violation of the Eighth Amendment's ban on excessive force.  Plaintiff also alleges that Defendants Bowerman, Mygrams, Rees, Nelson, Wells, Muas, and Blair all violated his right to petition government when they refused to provide him grievances.  In addition, Plaintiff contends that Defendant Lansky deprived him of his property without due process and in retaliation for Plaintiff's exercise of his First Amendment rights.  Plaintiff further alleges that Defendant Nurses Thomas and Diane refused to treat his serious physical injuries, in violation of the Eighth Amendment.  He alleges that Defendants Smith and Christiansen are liable as supervisors of the other officers and for failing to respond to grievances and kites.  Plaintiff alleges that

For relief, Plaintiff seeks compensatory and punitive damages, together with a permanent injunction barring the hog-tying of prisoners.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice.").  The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Supervisory Liability

Plaintiff alleges that Defendants Warden Smith and Deputy Warden Christiansen are responsible for the actions of their subordinates and for failing to respond or act on Plaintiff's kites and grievances.   He makes no other allegations against them.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Smith and Christiansen engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

B.    Failure to Provide Grievances

Plaintiff complains that Defendants Bowerman, Mygrams, Rees, Nelson, Wells, Muas, and Blair refused to provide him grievance forms when he asked for them.  He contends that

their refusal deprived him of his right to petition government.  Plaintiff's allegations also suggest that

he may intend to claim a violation of his right to due process.

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly

have held that there exists no constitutionally protected due process right to an effective prison

grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of

Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir.

2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-

3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422,

1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law

does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238,

249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411,

1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the

grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for

his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to

assert grievances typically is not violated when prison officials prohibit only 'one of several ways

in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving

a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir.

2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)).  Indeed,

Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See

Azeez v. DeRobertis*, 568 F. Supp.  8, 10 (N.D. Ill. 1982).  Even if Plaintiff was improperly prevented

from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e.,

-10-

by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim based on Defendants' refusal to provide him with grievance forms.  Because Plaintiff makes no other allegations against Defendants Rees, Nelson, Wells, Muas, and Blair, these Defendants will be dismissed from the action.

### C. Deprivation of Books

Plaintiff alleges that Defendant Lansky stole or lost his property, depriving him of property without due process of law.  He also claims that Lansky's actions were retaliatory.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."

-11-

*Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Indeed, he expressly alleges that Defendant Lansky told him that he should fill out a reimbursement form for three of the books, and she indicated that she would vouch that his books were lost.  Numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action

would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Further, although Plaintiff sweepingly claims that Defendant Lansky acted with a retaliatory motive, he fails to state a retaliation claim.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory

motive).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Defendant Lansky retaliated against him because unspecified protected conduct.  Accordingly, his speculative allegation fails to state a claim.

Because Plaintiff raises no other allegations against Defendant Lansky, Plaintiff's complaint against Defendant Lansky will be dismissed.

D.      Remaining Defendants

Upon review, the Court concludes that Plaintiff has sufficiently alleged at least one claim against Defendants Pol, Mygrams, Bowerman, Mieres, Diane, and Thomas.  The Court therefore will order service on Defendants Pol, Mygrams, Bowerman, Mieres, Diane, and Thomas.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Wells, Rees, Blair, Nelson, Lansky, Muas, Smith, and Christiansen will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Pol, Mygrams, Bowerman, Mieres, Diane, and Thomas.

An Order consistent with this Opinion will be entered.


Dated:  _____July 17, 2017_____          /s/ Robert J. Jonker_____
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE