UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LARON GLENN, # 373892,           )
                                 )
                Plaintiff,        )
                                 )        Case No. 1:17-cv-545
v.                               )
                                 )        Honorable Robert J. Jonker
JAMES APOL, et al.,               )
                                 )
                Defendants.       )
_____)

## AMENDED REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C.

§ 1983.  Plaintiff is an inmate at the Gus Harrison Correctional Facility.  His

complaint arises out of conditions of his confinement in 2016 at the Ionia Correctional

Facility.  The defendants are Social Workers James Apol and Elizabeth Meier, and

Corrections Officers Daniel Mygrants and Nicholas Bowerman.

Plaintiff alleges that defendants violated his Eighth Amendment rights.  He

alleges that Ms. Meier was deliberately indifferent to the risk that he would attempt

suicide, and that Corrections Officers Mygrants and Bowerman used excessive force

against him under the direction of Mr. Apol.  Plaintiff seeks an award of damages

and declaratory and injunctive relief.[1]

The matter is before the Court on cross-motions for summary judgment.  (ECF

No. 77, 91).  For the reasons set forth herein, I recommend that the Court dismiss

_____

[1] All other claims have been dismissed.  (ECF No. 5, 6, 46).

plaintiff's claims for damages against defendants in their official capacities with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that the Court deny plaintiff's motion for summary judgment (ECF No. 91), and that the Court grant defendants' motion for summary judgment (ECF No. 77) and enter judgment in defendants' favor on all plaintiff's claims.

## Summary Judgment Standard

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits.  *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005).  " '[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.' "  *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and

draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting *Matsushita*, 475 U.S. at 586).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' "  *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561; *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### **Qualified Immunity**

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity.  "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.  *Id.*  Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'"  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted).  "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted).  Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct.

500, 503 (2019) (*per curiam*).  Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity.").  The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Preliminary Matters

Plaintiff's complaint is verified under penalty of perjury.  (Compl., ECF No. 1, PageID.28).  It is considered as an affidavit in opposition to defendant's motion for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Plaintiff's briefs are not considered as affidavits.  Although a verification appears at the end of each brief, plaintiff added limitations that his statements were "true to the best of his information, knowledge, and belief."  (Plf. Brief, 12, ECF No. 84, PageID.631; Plf. Brief, 7, ECF No. 91, PageID.700).  "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).  "Verified" arguments

and legal conclusions are not evidence.  Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial.  *See Medison Am. Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x. 656, 662 (6th Cir. 2009).  "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

## Relevant Facts

Plaintiff was an inmate held in the custody of the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) all times relevant to his complaint.  (Compl., 1, ECF No. 1, PageID.1).

Plaintiff suffers from mental illness, including visual and auditory hallucinations.  (*Id.* at ¶¶ 11, 19, PageID.8, 11).  On March 11, 2016, Elizabeth Meier, LLMSW,[2] generated a treatment plan/review.   She summarized the clinical assessment of plaintiff's condition and identified his problem areas.  (ECF No. 78-5, PageID.513-15).  Plaintiff met with a review team consisting of Ms. Meier, Jason Gilliam, LLMSW, and a psychologist.  The treatment plan was to "continue to focus on reducing depressive symptoms and paranoia, with considerable emphasis placed on supporting medication compliance." (*Id.* at PageID.517)  Plaintiff expressed his understanding of the treatment plan.  (*Id.*).

---

[2] LLMSW indicates that the individual is a limited license master social worker.  *See Hudson v. Commissioner*, No. 16-12999, 2018 WL 1249321, at *3 (E.D. Mich. Jan. 31, 2018).

On the same date, plaintiff wrote a kite (informal complaint) addressed to Ms. Meier.  Plaintiff related that he was writing a book regarding Moorish-American Freemasonry, and he asked Ms. Meier to provide him with copies of information in nine listed categories, including gold fringe of the American flag in the courts as proof of admiralty.  (ECF No. 1-1, PageID.39).  Plaintiff ended this kite inquiring whether he could speak to Ms. Meier on a personal level:

> [W]ill others read my letters to you?  Because I want to talk to you on a personal level about my life, feelings and other things [that] I [am] going through mentally and emotionally; but I don't want everybody in our business because people [are] judging me all the time and I just need someone to talk to without them trying to put me on suicide watch and shit.  I had a very hard life and I'm depressed a lot.  Can I trust you?  You seem nice.

(*Id.*).  Ms. Meier did not reply.  (Compl. ¶ 12, PageID.8).

On March 11, 17, and 24, 2016, plaintiff attended group therapy sessions conducted by Mr. Gilliam.  All aspects of plaintiff's participation in group therapy were classified as "good" or "fair."  (ECF No. 78-5, PageID.518, 520, 522).

On March 23, 2016, plaintiff wrote a second kite to Ms. Meier.  This kite contained content that was inappropriate and sexually graphic.  On the same day, Ms. Meier filed a Class I misconduct report against plaintiff for sexual misconduct.  (ECF No. 1-1, PageID.32, 41-44; ECF No. 78-10, PageID.593; ECF No. 84-1, PageID.636).

On March 25, 2016, at approximately 1:00 p.m., plaintiff obtained a razor for the purpose of shaving and attempted to commit suicide by cutting his left arm.  Plaintiff was taken to the shower, searched, and placed on suicide watch.  (Compl.

¶ 15, PageID.9; ECF No. 78-5, PageID.523-27).   A nurse noted at 1:24 p.m. that plaintiff's bleeding had subsided.  When she provided plaintiff with gauze, he refused to clean his wound.  (ECF No. 78-5, PageID.523).  At approximately the same time, Mr. Gilliam sent a notice to ICF's housing unit staff that plaintiff was a moderate suicide risk and outlined appropriate precautionary measures.  (*Id.* at PageID.524). Mr. Gilliam attempted to evaluate plaintiff's suicide risk.  Plaintiff generally refused to cooperate, and Mr. Gilliam continued plaintiff on a moderate suicide risk management plan.  (*Id.* at PageID.525-27; ECF No. 91-1, PageID.712).

At approximately 2:13 p.m., Corrections Officer Nicholas Bowerman was conducting rounds.  He observed plaintiff attempting to re-open the wound on his arm.  Officer Bowerman gave plaintiff loud verbal commands to stop, and when he did not, Bowerman drew his personal chemical agent (PCA) and dispersed one burst through the bottom food slot.  He then summoned additional staff to assist him. (Video, ECF No. 78-2; Bowerman Aff. ¶¶ 1-5, ECF No. 78-7, PageID.580-81; Mygrants Aff. ¶ 6, ECF No. 78-9, PageID.590; ECF No. 78-11, PageID.595; ECF No. 84-1, PageID.646-47, 653).

Plaintiff states that he was sleeping on the afternoon in question.  He had "blood running from the large slice in his arm [and it was] caked up with blood clots." (Compl. ¶ 17, PageID.9). He "just wanted everybody to leave [him] alone and let [him] die in peace[.]"  (*Id.* at ¶ 16, PageID.9).  He heard Officer Bowerman, but he did not respond.  He heard Officer Bowerman say "holy shit," but because he "felt like a t[o]urist site," plaintiff "ignored [the officer's] presence to go back to sleep." (*Id.* at

¶ 18, PageID.10-11).  Plaintiff continued to ignore Officer Bowerman when he rattled the cell's food slot.  Plaintiff heard the "spray sound" of the chemical agent being dispersed and Officer Bowerman's order telling him to "stop cutting."  (*Id.*).  Plaintiff states that he "was not cutting."  (*Id.* at ¶ 18, PageID.10-11).

Plaintiff complied with an order to back up to the cell door.  He was placed in restraints and transported to a shower cell.  (*Id.*; Video, ECF No. 78-2).  Plaintiff told Mr. Gilliam that he did not want to live anymore and that he was tired of being mentally ill.  (*Id.* at ¶ 19, PageID.11).  Plaintiff indicated that he was suicidal, and that if he was left alone, he would find a way to continue to cut himself and finish what he had started.  When asked if he would cut himself again, plaintiff nodded yes and stated:  "I did this for a reason.  I don't want to be saved."  (Video, ECF No. 78-3).  Mr. Gilliam classified plaintiff as "HIGH RISK of suicide or self-injury."  (ECF No. 78-5, PageID.528; ECF No. 91-1, PageID.713).  Plaintiff also told a nurse not to bandage his wound because he planned to just finish the job.  During his time in the shower cell, plaintiff also made death threats toward Officer Bowerman.[3]  (Compl. ¶¶ 18-21, PageID.10-12; Video, ECF No. 78-3; ECF No. 78-5, PageID.528-32; ECF No. 84-1, PageID.643-44, 654).

Plaintiff was then transported to another room where he received healthcare and his wound was dressed and returned to a suicide watch cell in restraints.  (ECF No. 78-5, PageID.532).  Lieutenant Kevin Zwiker authorized placing plaintiff in Cell

---

[3] On March 25, 2016, plaintiff was charged with the Class I misconduct of threatening behavior.  On March 30, 2016, a hearing officer found plaintiff guilty and sentenced him to thirty days' loss of privileges.  (ECF No. 84-1, PageID.643-44).

Standing Hard restraints (ICSH) to prevent plaintiff from committing further self-injurious behavior.  ICSH restraints consist of a belly chain with hands cuffed at the side of the waist and a drop chain connected from the waist to the leg irons in the back.  These restraints allow for limited movement and a prisoner is able to access the toilet and water.  (Video, ECF No. 78-4; Bowerman Aff. ¶¶ 7-8, PageID.581-82; ECF No. 84-1, PageID.639, 654).  Plaintiff's condition was monitored, and the next morning when he responded that he was not going to hurt himself, the restraints were removed.  (Compl. ¶ 22, PageID.13; ECF No. 78-5, PageID.533-56; Bowerman Aff. ¶¶ 7-8, PageID.581; ECF No. 84-1, PageID.639-40, 654-59; ECF No. 91-1, PageID.710).

James Apol, CSW,[4] had his first interaction with plaintiff on April 5, 2016. Plaintiff complained that he had been on suicide prevention plan for eleven days, and he really just wanted to get out of his suicide prevention gown.  He had no plan for his safety or coping.  When Mr. Apol encouraged plaintiff to examine his options for dealing with stress and discuss them, he was unable to do so.  Plaintiff complained about his sexual misconduct tickets and how he is just misunderstood.  Mr. Apol noted that plaintiff had little insight, willingness, or ability to take responsibility for his choices.  He did not feel comfortable reducing plaintiff's suicide risk level.  (ECF No. 78-5, PageID.557-58; Apol Aff. ¶¶ 1-7, ECF No. 78-8, PageID.586-87).

---

[4] CSW indicates that the individual is a certified social worker.  *See Maze-Harris v. Commissioner*, No. 5:14-cv-102, 2015 WL 4776907, at *3 (W.D. Ky. Aug. 11, 2015).

On April 25, 2016, Mr. Apol was re-assigned as plaintiff's qualified mental health professional (QMHP) because plaintiff's previous caseworker quit his position. Plaintiff immediately demanded a new QMHP when he learned that Mr. Apol was his caseworker.  (ECF No. 78-5, PageID.572).  On May 3, 2016, plaintiff complained to Mr. Apol that he wanted "a new psych" because a guard told him that the Mr. Apol directed guards to rush his cell.  (ECF No. 78-5, PageID.574).  Mr. Apol did not give any such order.  He was not part of the custody chain of command and he had no authority to order custody staff to rush a cell, deploy a chemical agent, or secure an inmate in restraints.  (Apol Aff. ¶¶ 5-6, PageID.586; Bowerman Aff. ¶ 9, PageID.582; Mygrants Aff. ¶ 6, PageID.590).

## Discussion

### I.    Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within

-13-

the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

## II. Deliberate Indifference

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard: a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). No reasonable trier of fact could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against Ms. Meier.

-14-

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id*. at 837.  "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful."  *Rhinehart v. Scutt*, 894 F.3d at 738.  The judgments of medical professionals are entitled to deference.  *Id*.  The subjective component presents "a high bar that a plaintiff must clear to prove an Eighth Amendment medical needs claim:  The doctor must have *consciously exposed* the patient to an *excessive risk* of *serious* harm."  *Id*.  (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish.  Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.  Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim."

-15-

*Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).    "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."  *Id.* at 744.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.  *Id.* at 753.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious mental health needs.[5]  The record shows that Ms. Meier displayed no deliberate indifference.  The claims that Ms. Meier "should have" provided him with "different" mental health care are, at best, state-law malpractice claims.

## III.    Excessive Force

The Eighth Amendment limits the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*

---

[5] Plaintiff argues that his kite to Ms. Meier was "not a come-on" and that he received the major misconduct ticket for sexual misconduct because his message was "misunderstood."  (Plf. Brief, 5, ECF No. 91, PageID.698).  The Eighth Amendment does not insulate plaintiff against being charged with violating prison rules.

Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  The analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010).  Not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.

The Court "must judge the reasonableness of the use of force from the perspective and with the knowledge of the defendant officer."  *Kingsley v. Hendrickson*, 135 S Ct. 2466, 2474 (2015).  In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321).  While

-17-

the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. at 297-300. To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See Leary v. Livingston County*, 528 F.3d 438, 445 (6th Cir. 2008); *see also Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011).

Plaintiff claims that Mr. Apol violated his Eighth Amendment rights by ordering Corrections Officers Mygrants and Bowerman "to rush and ma[c]e plaintiff while he was asleep showing no signs of disruptive behavior[.]" (Compl. ¶ 57, PageID.25). The video recording shows that there was no cell rush.[6] Plaintiff provides no coherent explanation how he could be "asleep" and hear and ignore Officer Bowerman. Plaintiff concedes that he attempted suicide earlier in the day, that his arm was bleeding, and that he did not respond to Officer Bowerman. The

---

[6] The Supreme Court and the Sixth Circuit have recognized that the Court need not accept a party's characterization of events as true where, as here, it is blatantly contradicted by the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Neal v. Melton*, 453 F. App'x 572, 577 (6th Cir. 2011).

video also shows that Officer Bowerman was the only person outside plaintiff's cell when he sprayed the chemical agent.  Use of the chemical agent did not violate plaintiff's Eighth Amendment rights.  *See Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *2 (6th Cir. Apr. 17, 2017); *see also Young v. Taylor*, No. 1:18-cv-490, 2018 WL 6417290, at *6 (S.D. Ohio Dec. 6, 2018) ("Eighth Amendment standards permit the use of pepper spray in order to force an inmate to comply with an order, to counteract a perceived threat, or to restore discipline.").  There is no medical evidence that plaintiff suffered any injury stemming from his exposure to the chemical agent.  Plaintiff has not presented evidence on which any reasonable trier of fact could find in his favor on the objective or subjective components of an Eighth Amendment claims against Officers Bowerman or Mygrants.

Plaintiff claims that Mr. Apol violated his Eighth Amendment rights by ordering the application of ICSH restraints and that Officer Bowerman violated his Eighth Amendment rights by applying the restraints and allowing plaintiff to be kept in the restraints for roughly seventeen hours.  (Compl. ¶¶ 57-58, PageID.25).  The record shows that Lieutenant Zwiker authorized placing plaintiff in Cell Standing Hard restraints (ICSH) to prevent plaintiff from committing further self-injurious behavior.  Plaintiff's condition was monitored, and the next morning when he responded that he was not going to hurt himself, the restraints were removed.  "[T]he use of physical restraints is constitutionally permissible if there is 'penological justification' for their use."  *Brown v. Perez*, 2017 WL 3378994, at *2 (quoting *Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002)).  I find that on this record, no reasonable

trier of fact could find in plaintiff's favor on Eighth Amendment claims against any defendant.

## IV.    Qualified Immunity

Qualified immunity provides an additional basis for granting summary judgment in favor of defendants on plaintiff's claims for damages against defendants in their individual capacities.   Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis for the reasons stated in the sections II and III.

The second prong of the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198.  It was plaintiff's burden to convince the Court that the law was clearly established in a "particularized sense" in 2016 when each defendant acted. *See District of Columbia v. Wesby*, 138 S. Ct. at 589.  The clearly established right must be defined with specificity.  The Supreme Court has " 'repeatedly told [lower] courts ... not to define clearly established law at a high level of generality.' " *City of Escondido, Calif*, 139 S. Ct. at 503 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

Plaintiff has not carried his burden of demonstrating on each claim that the defendant's actions violated his clearly established rights.  The only cases that plaintiff cites in response to defendants' claim of qualified immunity are W*hitley v. Albers*, 475 U.S. 312 (1986) and *Procunier v. Navarette*, 434 U.S. 555 (1978).  (Plf. Brief, 9-11, ECF No. 84, PageID.628-30).  In *Whitley*, the Supreme Court considered

-20-

the claim of a prisoner shot in the knee during the quelling of a prison riot.  The Court held that infliction of pain in course of a prison security measure was an Eighth Amendment violation only if inflicted unnecessarily and wantonly, and that the shooting of prisoner under the circumstances, without prior verbal warning, did not violate the prisoner's Eighth Amendment rights.  475 U.S. at 319-26.  And, if anything, *Procunier v. Navarette*, supports defendants' claim of entitlement to qualified immunity.  The Supreme Court held that prison officials were entitled to qualified immunity because there was no clearly established First and Fourteenth Amendment right protecting state prisoners' outgoing mail privileges at time the defendants acted.  434 U.S. at 562-65.

I find that plaintiff has not carried his burden of demonstrating that defendants' actions violated his clearly established Eighth Amendment rights.

## V.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment (ECF No. 91) requires little discussion.  Defendants are entitled to judgment in their favor on all plaintiff's claims for the reasons stated herein.  Further, as the party with the burden of persuasion, plaintiff's evidence falls well short of being so powerful that no reasonable jury would be free to disbelieve it.  *See Arnett*, 281 F.3d at 561.  Plaintiff's motion for summary judgment should be denied.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court dismiss plaintiff's claims for damages against defendants in their official capacities with prejudice, as they are barred by Eleventh Amendment immunity.  I recommend that the Court deny plaintiff's motion for summary judgment (ECF No. 91), that the Court grant defendants' motion for summary judgment (ECF No. 77), and that the Court enter judgment in defendants' favor on all plaintiff's claims.

Dated:   July 19, 2019                      /s/  Phillip J. Green
                                                            PHILLIP J. GREEN
                                                            United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).